**SO ORDERED.**

**SIGNED this 17 day of June, 2016.**

_____

**David M. Warren**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 15-05957-5-DMW |
| ROBERT ELKANAH FIELDS, III | CHAPTER 7 |
| DEBTOR | |

**MEMORANDUM OPINION DENYING MOTION TO SET ASIDE DISCHARGE**
**AND MOTION TO CONVERT CASE TO CHAPTER 13**

This matter comes before the court upon the Motion to Set Aside Discharge of Debtor and Debtor's Motion to Convert a Chapter 7 to Chapter 13 (collectively "Motions") filed by Robert E. Fields, III ("Debtor") on February 15, 2016 and the Trustee's Objection to Debtor's Motion to Convert a Chapter 7 to Chapter 13 ("Objection") filed by John C. Bircher III, Esq. ("Trustee"), the Chapter 7 trustee, on February 17, 2016. The court conducted a hearing ("Hearing") on May 26, 2016 in Greenville, North Carolina. Robert E. Fuller, Jr., Esq. appeared for the Debtor, and the Trustee appeared on his own behalf. Based upon the pleadings, evidence presented, and arguments of counsel, on May 27, 2016, the court entered an Order Denying Motion to Convert Case to Chapter 13 and Denying Motion to Set Aside Discharge of Debtor ("Order"), which denied both of the Motions and directed the Debtor to surrender immediately possession of a 1987 Porsche 911

("Vehicle") to the Trustee. In support of the Order, this Memorandum Opinion sets forth the court's findings of fact and conclusions of law:

## JURISDICTION

1.   This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## BACKGROUND

2.   The Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code ("Code") on November 2, 2015, and the court appointed the Trustee to administer the estate pursuant to 11 U.S.C. § 704.

3.   The Debtor's original Schedule B listed the Vehicle as an asset and indicated the Vehicle was "not running" at the time of filing. The Debtor scheduled the Vehicle's value at $500.00, which he claimed as part of his "wild card" exemption pursuant to N.C. Gen. Stat. § 1C-1601(a)(2).

4.   Pursuant to 11 U.S.C. § 341, the Trustee conducted the meeting of creditors on November 30, 2015 ("341 Meeting") and questioned the Debtor about the condition of the Vehicle. The Debtor maintained that the Vehicle was not in good condition and confirmed the value of $500.00 listed in his Schedules.

5.   At the 341 Meeting, the Trustee requested photographs of the Vehicle. The Debtor subsequently provided the Trustee with five photographs ("First Photos") of the Vehicle taken in the Debtor's poorly lighted garage.

6. The First Photos included several images showing the exterior of the Vehicle, only one photograph showing the Vehicle's interior, and one photograph that appeared to show oil leaking from underneath the Vehicle. The court agrees with the Trustee that the First Photos were "vague and unclear." The First Photos were misleading and insufficient to allow the Trustee to make an accurate assessment of the Vehicle's condition.

7. The Trustee then requested, and the Debtor provided, additional, more comprehensive photographs ("Second Photos") of the Vehicle. Based upon the Second Photos, the Trustee requested Country Boy's Auction & Realty, Inc. ("Auctioneer") to conduct an on-site inspection of the Vehicle.

8. The Auctioneer's on-site inspection revealed that the Vehicle was indeed operable. Based on that information, the Trustee instructed the Auctioneer to consult auto dealers and brokers regarding the value of the Vehicle. The Auctioneer determined the Vehicle was potentially worth between $12,000.00 and $30,000.00, even in its non-restored state, because collectors place a high value on vintage models of the Porsche 911.

9. The deadline for the Trustee to object to the discharge of the Debtor's debts was January 29, 2016 ("Bar Date"). At the Hearing, the Trustee acknowledged that he considered requesting an extension of the deadline due to the Debtor's Schedules and misrepresentations about the Vehicle. The Trustee ultimately decided not to pursue an extension, because the Debtor had recently sent him the Second Photos and showed signs of cooperation. The Trustee stated that he believed the Debtor would continue to cooperate and surrender the Vehicle upon request. After the Bar Date passed with no action by the Trustee, the Debtor received a discharge pursuant to 11 U.S.C. § 727 on February 1, 2016.

10. On February 12, 2016, the Trustee intended to have the Vehicle retrieved and placed in his possession. After conversations with counsel for the Debtor, the Trustee provided the Debtor with an additional three days to either re-purchase the Vehicle for the Trustee's offered price of $14,000.00 ("Compromise Value") or surrender the Vehicle to the bankruptcy estate. In response, the Debtor filed the Motions.

11. Through the Motions, the Debtor requested that his Chapter 7 discharge be set aside and that he be allowed to convert his case to Chapter 13 for the purpose of paying the Compromise Value to his creditors over the life of a Chapter 13 plan.

12. In the Objection, the Trustee alleged that the Debtor attempted to conceal the true value of the Vehicle and that the Debtor's conduct during the Chapter 7 case, specifically his misrepresentations on Schedule B, continued misrepresentations at the 341 Meeting, and the misleading First Photos, amounted to bad faith sufficient to deny a conversion to Chapter 13.

13. Additionally, the Trustee stated that the Debtor is currently unemployed, and his only source of income is from an annuity which the Debtor vaguely testified has a total value between $10,000.00 and $11,000.00. Schedule J filed with the Debtor's petition shows expenses equal to the monthly annuity payments, leaving no ability to fund a Chapter 13 plan. On March 2, 2016, after the Trustee filed the Objection, the Debtor filed an Amended Schedule J that reflects reductions in various household expenses and a resulting net income of $299.00 per month. The court finds the Amended Schedule J to be unrealistic at best, or indicative that expenses in the original Schedule J were inflated, at worst.

14. The Trustee requested to recover the Vehicle and sell the asset for the benefit of the estate.

DISCUSSION

15.     Generally, Chapter 7 individual debtors have the right to convert their case to a Chapter 13 case at any time. 11 U.S.C. § 706(a).  This provision also states that "[a]ny waiver of the right to convert a case under this subsection is unenforceable." *Id*.  Although the statutory language appears on the surface to be unambiguous, the Federal Rules of Bankruptcy Procedure ("Rules") require that conversion under 11 U.S.C. § 706(a) "shall be on motion filed and served as required by Rule 9013.[1]" Fed. R. Bankr. P. 1017(f)(2).  In contrast, "[a] chapter 12 or chapter 13 case shall be converted without court order when the debtor files a notice of conversion . . . ." Fed. R. Bankr. P. 1017(f)(3).  Due to the conflicting language between the Code and the Rules, courts are divided on whether a debtor has an absolute right to convert his case from Chapter 7 to Chapter 13.

16.     Some courts view the motion requirement of Rule 1017(f)(2) as an indication that courts may exercise some discretion to determine if conversion is appropriate. *See, e.g., In re Marcakis*, 254 B.R. 77 (Bankr. E.D.N.Y. 2000).  In *Marcakis*, Judge Eisenberg explained that interpreting 11 U.S.C. § 706(a) as granting debtors an absolute right of conversion would be "very much at odds with the equitable considerations of eligibility, good faith and appropriateness which are inherent in a court's review of the facts and circumstances in any request brought on by motion." *Id.* at 79.  Judge Eisenberg acknowledged that a debtor's right to convert to Chapter 13 is almost absolute but also noted that courts serve an important role and "must determine if the conversion is appropriate pursuant to the overall purpose and policy of the Bankruptcy Code." *Id.* at 82.

---

[1] Rule 9013 provides that "[a] request for an order, except when an application is authorized by these rules, shall be by written motion, unless made during a hearing.  The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Fed. R. Bankr. P. 9013.

17. The Code expressly allows a bankruptcy court to take any action "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). *See, e.g., Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 549 U.S. 365 (2007) (holding a court had authority to deny conversion when the debtor had acted in bad faith, and when allowing conversion would be an abuse of the bankruptcy process); *In re Criscuolo*, No. 09-14063-BFK, 2014 WL 1910078 (Bankr. E.D. Va. May 13, 2014).

18. *Marrama* presented facts similar to the present case. In *Marrama*, the debtor misrepresented the value of his principal asset, a house located in Maine. 549 U.S. at 368. The debtor indicated in his schedules that the property had a value of zero, when in fact the property was of substantial value. *Id.* Additionally, the debtor transferred the house to a recently created trust seven months prior to filing his petition to protect the property from his creditors. *Id.* Upon discovery of these misrepresentations, the Chapter 7 trustee notified the debtor of his intention to recover the property as an asset of the estate. *Id.* Only then did the debtor seek to convert his case to Chapter 13. *Id.* at 368-69. The trustee and a creditor objected, contending "that the request to convert was made in bad faith and would constitute an abuse of the bankruptcy process." *Id.* at 369.

19. The bankruptcy court in *Marrama* found that the debtor's attempt to conceal assets rose to the level of bad faith and ruled that the debtor had forfeited his right to convert to Chapter 13. *Id.* at 370. On appeal, the debtor argued that § 706(a) gave him an absolute right to convert his case at any time. *Id.* at 370; *Marrama v. Citizens Bank of Mass. (In re Marrama)*, 313 B.R. 525, 530 (B.A.P. 1st Cir. 2004). In affirming the bankruptcy court's denial of the debtor's request to convert and the Bankruptcy Appellate Panel for the First Circuit's and First Circuit Court of Appeals' orders affirming the bankruptcy court, the United States Supreme Court expressed its

view that the right of a Chapter 7 debtor to convert to Chapter 13 is not absolute. *Id.* at 374. The Court addressed the language of 11 U.S.C. § 706(a) and determined a "provision protecting a borrower from waiver is not a shield against forfeiture." *Id.*

20.    In support of its decision, the *Marrama* Court relied upon the language of 11 U.S.C. § 706(d), which limits the right to convert to Chapter 13 to one who is eligible to be a debtor under the provisions of that chapter. *Id.* Upon request by a party in interest, a Chapter 13 case can be dismissed or converted to Chapter 7, "for cause." 11 U.S.C. § 1307(c). This statute includes a non-exclusive list of causes that would justify dismissal or conversion, but courts have also held that acts of bad faith committed prior to filing constitute "cause" for the purposes of § 1307(c). *Marrama*, 549 U.S. at 367 n. 3. The Court in *Marrama* reasoned that because a Chapter 13 case could be dismissed or converted to Chapter 7 based on bad faith, the effect was "tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Id.* at 374. If a Chapter 7 debtor would be ineligible under Chapter 13, then 11 U.S.C. § 706(d) prohibits the case from being converted; therefore, a Chapter 7 debtor who is found to have acted in bad faith is ineligible for Chapter 13 and will have his motion to convert denied.

21.    The Supreme Court reinforced the broad authority granted by § 105(a) by stating "[n]othing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." 549 U.S. at 374-75.

22.    This court previously followed *Marrama* to deny Chapter 7 debtors' motion to convert to Chapter 13, when the debtors failed to disclose significant assets on their schedules and continued to make misrepresentations about the assets in question to their Chapter 7 trustee. *In re*

7

*Harper*, No. 10-07510-8-JRL, 2011 WL 289641 (Bankr. E.D.N.C Jan. 27, 2011). In *Harper*, the court found the debtors' "initial schedules so misleading as to give rise to an inference of bad faith, which in turn prevents conversion." *Id.* at *1. The court dismissed the debtors' argument that the non-disclosure was a simple oversight and not an intentional effort to conceal assets, stating that the "[d]ebtors cannot pick and choose items for disclosure on their schedules and rely on the trustee to uncover the rest through investigation . . . ." *Id.*

23.  The Debtor in this case is very fortunate that the Trustee elected not to pursue an objection to his discharge. Had the Trustee elected otherwise, the Debtor might lose far more than the Vehicle. The Debtor should be thankful the Trustee allowed, in his discretion, the Bar Date to pass.

## CONCLUSION

24.  A determination of bad faith requires an examination of the totality of the circumstances. *In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008). The court finds that the Debtor made material misrepresentations, both in his Schedules and at the 341 Meeting, regarding the value and condition of the Vehicle. The First Photos provided to the Trustee were misleading, and the Debtor was not forthcoming in conversations with the Trustee. The Debtor's attempt to convert to Chapter 13 reeks of bad faith and undermines the Code's primary goal to provide a clean slate to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). This court will not permit the Debtor to keep a luxury sports car, no matter the age, while struggling to pay creditors and other obligations; therefore, as provided in the Order, the Motions are denied.

END OF DOCUMENT